# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| JENNIFER L. STAAR,<br><br>    Petitioner,<br><br>    vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Respondent. | Case No.: 2:14-cv-00033-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:** |

Pending before this Court is Petitioner Jennifer L. Staar's Complaint/Petition for Review (Docket No. 2) and related Motion for Summary Judgment (Docket No. 21).  Having carefully considered the record and otherwise being fully advised, the undersigned enters the following Memorandum Decision and Order:

## I.  RELEVANT BACKGROUND

In 2001, Petitioner was awarded Supplemental Security Income disability benefits under Title XVI of the Social Security Act.  At that time (and until July 2007), Petitioner lived in Oracle, Arizona (the "Arizona Residence"), caring for her elderly mother. While living there, the Arizona Residence was excluded as a resource under the Social Security Act because it represented Petitioner's primary residence.

However, on July 13, 2007, Plaintiff moved to Idaho to live with her brother, describing the circumstances surrounding the move in the following exchange with Administrative Law Judge James W. Sherry during ("ALJ") during the April 22, 2010 hearing:

> ALJ:   And at the time before you moved, your mother was living with you and you were taking care of her?

**MEMORANDUM DECISION AND ORDER - 1**

A:       She was in hospice in my home.

ALJ:    Right.

A:       They were giving my mom approximately three months to live.

ALJ:    And I understand that you needed help with your mother, and that's
        what caused you to move to Idaho with your brother?

A:       Yes.  And my mom is in an infant state.  She needs feeding, bathing,
        changing, you need to position her, she needs to be lifted from the
        bed to her wheelchair.  And my dad had been assisting me with this.
        My dad is now 85 years old.  But he had developed a severe hernia,
        and he could not help –

ALJ:    Couldn't do the heavy –

A:       Right.

ALJ:    Stuff.

A:       And he needed surgery.  And there was just no option – no option.
        It – I could no longer take care of my mom by myself.  My dad was
        going to also need help.  So all the family got together and they
        decided that was the only option open.

(AR 393-94).  Relevant here, Petitioner intended to sell the Arizona Residence and use the

proceeds from the sale to purchase a new home in Idaho to be closer to her family.  Petitioner

claims to have attempted to sell the Arizona Residence (both on her own and via a realtor), but,

to date, has been unsuccessful – all the while, Petitioner continues to pay expenses related to the

Arizona Residence.

        In any event, following the move to Idaho, on July 9, 2008, the Social Security

Administration (SSA) conducted a Redetermination Application to determine Petitioner's

continued eligibility to receive disability benefits.  (AR 19-23).  Of note, in August 2008, the

SSA determined that, once Petitioner moved to Idaho, the Arizona Residence became a

countable/nonexcludable resource under the Act.  (AR 47-62, 83-92).  Accordingly, because the

**MEMORANDUM DECISION AND ORDER - 2**

value of Petitioner's countable/nonexcludable resources (which now included the Arizona Residence) exceeded the $2,000.00 threshold, Petitioner was no longer eligible for disability benefits; indeed, the SSA (1) informed Petitioner that, from July 1, 2007 through August 2008 and continuing, her benefits were being suspended due to excess resources, and (2) notified Petitioner of an overpayment in the amount of $7,029.12. *See id.*

Although there are many moving parts to the back-and-forth correspondence between Petitioner and the SSA leading up to this point (and beyond, with significant temporal gaps throughout), suffice it to say, Petitioner disagreed that her move to Idaho to help care for her mother, meant that the Arizona Residence was no longer an excludable resource. To this end, Petitioner filed a Request for a Hearing before an Administrative Law Judge, a Request for Reconsideration, and a Request for Waiver of Overpayment Recovery. (AR 225-42).

On April 22, 2010, a hearing before ALJ Sherry then took place in Spokane, Washington. At that time, ALJ Sherry understood the issues before him to be (1) whether "there has been an overpayment of supplemental security income benefits, and if so, for what month(s)"; and (2) if an overpayment occurred, whether "adjustment or recovery of the incorrect payment should be waived." (AR 15); *see also* (AR 405) (ALJ Sherry characterizing issues as: "But the – my job is to decide, one, did they correctly apply the rules in terms of creating the overpayment. I also have to address the ISM. And then if I decide that they were correct in the way they applied that in establishing the overpayment, then I decide if the waiver is applicable because you, number one, weren't at fault and, number two, there's good reasons why the waiver should be applied in your case."). On May 12, 2010, ALJ Sherry issued his "Decision," answering both of these questions in the affirmative – specifically, (1) that Petitioner was overpaid benefits from July

**MEMORANDUM DECISION AND ORDER - 3**

2007 to August 2008 in the amount of $7,029.12; but (2) that recovery of the overpayment amount is waived because Petitioner was without fault, recovery of the overpayment would defeat the purpose of the Act, and recovery of the overpayment would be against equity and good conscience.  (AR 17-18) (citing 20 C.F.R. §§ 416.552, 416.553, 416.554).

At first blush, one might think that ALJ Sherry's Decision was well-received by Petitioner.  Alas, it was not.  While the fact that any overpayment was waived was no doubt a relief,[1] the additional fact that the ALJ still found that Petitioner was overpaid benefits in the first instance essentially amounted to an endorsement of the SSA's previous conclusions concerning the Arizona Residence – namely, that it morphed into a countable/nonexcludable resource under the Act once Petitioner moved to Idaho.  Once again, Petitioner disagreed and, on July 14, 2010, requested a review of the ALJ Sherry's Decision by the Appeals Council.  (AR 352).[2]

On August 23, 2012, the Appeals Council granted Petitioner's request for review under the substantial evidence provisions of the SSA regulations.  (AR 355).  In a somewhat unusual twist, the Appeals Council vacated the Decision and remanded the case to an ALJ for further proceedings, including a new decision because the underlying record could not be located.  *See id*.  ("The Appeals Council has been unable to locate or redevelop the evidence.  Because of this, the Appeals Council is unable to determine whether the decision is supported by substantial evidence.  Accordingly, the Appeals Council finds that the claimant should have the opportunity for a new hearing and decision on the issues raised by the application.").

---

[1]  In this respect, within the SSA's Notice of Decision, ALJ Sherry characterizes his Decision as "fully favorable."  (AR 12) ("I carefully reviewed the facts of your case and made the enclosed fully favorable decisions.").  Even so, Petitioner was provided with an opportunity to appeal the Decision with the Appeals Council if she disagreed with it.  *See id*.

[2]  Though submitted on July 14, 2010, it does not appear that the SSA received Petitioner's request for review until a full two years later, on July 14, 2012.  (AR 352).

**MEMORANDUM DECISION AND ORDER - 4**

But then, on December 17, 2012, the Appeals Council vacated its prior order of remand, stating that, "[s]ubsequent to the remand, the missing recording was located and associated with the record, which is now complete." (AR 357-60). In doing so, the Appeals Council reinstated Petitioner's earlier request for review. *See id.*

On March 1, 2013, the Appeals Council notified Petitioner that it had denied her request for review, concluding that Petitioner's reasons for challenging ALJ Sherry's Decision "d[id] not provide a basis for changing the [ALJ's] Decision." (AR 368-71).[3] Still, on April 4, 2013, the SSA invited Petitioner to submit any new evidence "material to the issues considered in the hearing decision dated March 1, 2013." (AR 363-64).[4] On April 30, 2013, Petitioner then submitted a "Continuation of Request for Appeals Council Review Dated July 14, 2010 of Administrative Law Judge's Decision Dated May 12, 2010," arguing that ALJ Sherry's Decision should be reversed and remanded for the immediate reinstatement of benefits. (AR 374-80).

Treating Petitioner's latest salvo as a request to re-open the case and change ALJ Sherry's Decision, on November 29, 2013, the Appeals Council found no basis to change its March 1, 2013 denial of Petitioner's request for review. (AR 3). This made ALJ Sherry's Decision the final decision of the Commissioner of Social Security. *See id.*; *see also* 20 c.F.R. § 416.1481. Now, through the instant action and at-issue Motion for Summary Judgment, Petitioner seeks review of ALJ Sherry's Decision and the Appeals Council's denial of

---

[3] The record indicates that Petitioner understood this letter to have been issued by mistake owing to a March 5, 2013 telephone call she received from Mary Hunter. (AR 361-62) (Petitioner confirming in letter with SSA that its March 1, 2013 letter was sent in error and should be disregarded).

[4] Though unclear, it is assumed that the "hearing decision dated March 1, 2013" is the March 1, 2013 Notice of Appeals Council Action denying Petitioner's request for review referenced above. (AR 368-71).

**MEMORANDUM DECISION AND ORDER - 5**

Petitioner's request for review, claiming that she should not have been denied disability benefits in the first instance, such that an overpayment (even if waived) should not have been assessed against her.  *See generally* Compl. (Docket No. 2); Mot. for Summ. J. (Docket No. 21).

## II.  <u>LEGAL STANDARDS</u>

District courts have jurisdiction to review the final decisions of the Commissioner of Social Security and have the power to affirm, modify, or reverse the Commissioner's decisions, with or without remanding for further hearings.  *See* 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3).  When asked to review the Commissioner's decision, the court takes as conclusive any findings of the Commissioner which are free from legal error and supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be based on the record as a whole.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence means "more than a mere scintilla," but "less than a preponderance."  *Id.*; *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).  Even if the Commissioner's findings are supported by substantial evidence, they should be set aside if proper legal standards were not applied when weighing the evidence and in reaching a decision.  *See Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).  In reviewing the record, the Court must consider both the evidence that supports and detracts from the Commissioner's conclusion.  *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th cir. 1985)).  If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  *See Gallant v. Heckler*, 753 F.2d 1450, 1452-53 (9th Cir. 1984).  If the Court identifies defects in the administrative proceeding or the ALJ's conclusions, the Court may remand for

**MEMORANDUM DECISION AND ORDER - 6**

further proceedings or for a calculation of benefits.  *See Garrison v. Colvin*, 759 F.3d 995, 1019-21 (9th Cir. 2014).

### III.  ANALYSIS

The sole issue before the Court is whether substantial evidence exists to support ALJ Sherry's conclusion that Petitioner was overpaid benefits because she was not eligible for Supplemental Security Income benefits due to the fact that her countable resources (which, according to ALJ Sherry, included the Arizona Residence) exceeded $2,000.00.  On this lynchpin issue, Petitioner argues that the ALJ erred in concluding that the Arizona Residence became a countable/nonexcludable resource under the Act once she moved to Idaho to care for her mother.

Under the Act, an individual is eligible for Social Security Income benefits if (1) she is aged, blind, or disabled, and (2) her countable income and resources fall below $2,000.00.  *See* 42 U.S.C. § 1382(a); 20 C.F.R. § 416.1205(c) (setting limit for individuals not residing with spouse).  An individual's home is not considered a countable resource.  *See* 20 C.F.R. §§ 416.1210(a), 416.1212(b).  A "home" is defined as "any property in which an individual . . . has an ownership interest and which serves as the individual's principal place of residence."  20 C.F.R. § 416.1212(a).  However, if a claimant moves out of her home "without the intent to return, the home becomes a countable resource because it is no longer the individual's principal place of residence."  20 C.F.R. § 416.1212(c).

Here, in determining that Petitioner was overpaid benefits from July 2007 to August 2008, ALJ Sherry necessarily concluded that, once Petitioner moved in with her brother in Idaho, she never intended to return to the Arizona Residence, thus transforming the Arizona

**MEMORANDUM DECISION AND ORDER - 7**

Residence into a countable resource following the move.  *See* (AR 17) ("The claimant's primary residence for many years was in Arizona until she moved to Idaho.  *At that point, the claimant's property in Arizona became a resource.*") (emphasis added).  Respondent's briefing endorses such a conclusion.  *See* Resp't Brief, p. 6 (Docket No. 22) ("Because she put her Arizona home up for sale, this demonstrates she did not intend to return.  Given the lack of intent to return to her home in Arizona, the home because a 'countable resource' for title XVI purposes.").

It is against this backdrop that Petitioner brings the instant action – namely, that her move from Arizona to live with her brother in Idaho was only a temporary one, made in order to care for their ailing mother.  On this point, Petitioner argues that she intended to sell the Arizona Residence before purchasing a new residence in Idaho (where Petitioner and her mother would then live).  *See* Pet.'s Brief, p. 9 (Docket No. 21, Att. 2) ("Plaintiff reported that if her Arizona home had not sold prior to Plaintiff having to leave in July 2007, Plaintiff would list the home with a realtor and she and her parents would have to temporarily stay at her brother's home in Idaho, until the A[rizona] home was sold and Plaintiff could purchase a home in Idaho where Plaintiff and her parents would live.").  According to Petitioner, these circumstances do not reflect an intent *not* to return to the Arizona Residence (so as to render the Arizona Residence a countable resource under 20 C.F.R. § 416.1212(c)), particularly when considering its possible interplay with 20 C.F.R. § 416.1212(e), which provides in pertinent part:

> The proceeds from the sale of a home which is excluded from the individual's resources will also be excluded from resources to the extent they are intended to be used and are, in fact, used to purchase another home, which is similarly excluded, within 3 months of the date of receipt of the proceeds.

20 C.F.R. § 416.1212(e)(1).  In this respect, Petitioner not only claims to have listed the previously-excluded Arizona Residence for sale (intending to formally purchase a new residence in Idaho with the proceeds of any such sale), but also to have reported to the SSA these same

**MEMORANDUM DECISION AND ORDER - 8**

intentions all along.  *See* Pet.'s Brief, p. 11 (Docket No. 21, Att. 2).  The legal consequence, if

any, surrounding the fact that the Arizona Residence has not yet sold is unclear; regardless,

based upon the above-referenced regulatory framework, Petitioner argues that it would be

unreasonable to interpret her actions as manifesting a move out of the Arizona Residence

"without the intent to return."  *See id.* at pp. 11-12.

Of note, ALJ Sherry explicitly acknowledged Petitioner's efforts in these regards, and did

so in more-or-less complimentary terms, stating:

> The claimant testified she continues to own her home in Oracle, Arizona.  This
> property was excluded as a resource for many years because it was her primary
> residence.  The claimant moved to Athol, ID, in July 2007.  The claimant moved to
> Idaho to live with her brother because she needed assistance taking care of her
> mother who was living with her in Idaho.  The claimant has consistently maintained
> and testified that she contacted the Social Security office in April 2007 to let them
> know she was moving from Arizona.  She said she was putting her house up for sale
> by owner until July 2007.  If her house did not sell before she left, she would list the
> house with a realtor.  The claimant testified she asked very detailed questions
> regarding the sale of her house.  She said she was told there would be no change in
> her benefits.  She was told to keep all her receipts and she would have 90 days from
> the sale of her home to purchase a new home.  The claimant was again informed in
> April 2008, that there would be no change in benefits although her home still had not
> sold. . . . .

(AR 17).  He then went on to find that Petitioner was without fault in accepting the presumed

overpayment of benefits and that, as such, any recovery of that overpayment was waived.  *See id.*

at (AR 17-18).  In doing so, however, ALJ Sherry never analyzed, or even considered, whether

20 C.F.R. § 416.1212(e) applied to Petitioner's situation – specifically, whether Petitioner's

understood intent to sell the Arizona Residence for the purposes of purchasing a new residence

in Idaho affected her claim to disability benefits and, if so, to what degree.  It may well be the

case that, in such a setting, 20 C.F.R. § 416.1212(e) does not apply to prevent the Arizona

Residence from becoming a countable resource; but that issue was neither addressed by ALJ

Sherry, nor by Respondent in their briefing on this nuanced issue.

**MEMORANDUM DECISION AND ORDER - 9**

In this setting, it cannot be said that substantial evidence exists to support ALJ Sherry's decision that Petitioner was overpaid benefits from July 2007 to August 2008.  Petitioner's Motion for Summary Judgment is therefore granted, but only to the extent that the matter is remanded for further consideration by the ALJ.

### III.  ORDER

Based on the foregoing, Petitioner's request for review is GRANTED, pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ shall consider whether, in light of 20 C.F.R. § 416.1212(e), Petitioner's understood intent to sell the Arizona Residence for the purposes of purchasing a new residence in Idaho affected her claim to disability benefits and, if so, to what degree.  **The ALJ is encouraged to prioritize such a review as expeditiously as possible, given the procedural delays to this point in time**.

DATED:  **February 25, 2017**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 10**